**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER REDDICK, TERRI EUBANKS and DAVID REDDICK** § § | | |
| Plaintiffs § | | |
| § | | |
| v. § | **CIVIL ACTION NO.  2:08-cv-00429** | |
| § | **Jury Trial** | |
| **GENERAL MOTORS CORPORATION, TAKATA CORPORATION, T K HOLDINGS, INC., IRVIN AUTOMOTIVE INDUSTRIES, INC., IRVIN AUTOMOTIVE PRODUCTS, INC., HALLE INDUSTRIES, INC., TAKATA, INC., TAKATA SEATBELTS, INC., TAKATA RESTRAINT SYSTEMS, INC., TAKATA PETRIE AG and DOES 1-100** § § § § § § § § § § § | | |
| Defendants § | | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COME PLAINTIFFS, CHRISTOPHER REDDICK, TERRI EUBANKS and DAVID REDDICK complaining of and about GENERAL MOTORS CORPORATION, TAKATA CORPORATION, T K HOLDINGS, INC., IRVIN AUTOMOTIVE INDUSTRIES, INC., IRVIN AUTOMOTIVE PRODUCTS, INC., HALLE INDUSTRIES, INC., TAKATA INC., TAKATA SEATBELTS, INC., TAKATA RESTRAINT SYSTEMS INC., TAKATA PETRI AG and DOES 1-100, Defendants, and would respectfully show the Court the following:

### I.  PARTIES

1.     Plaintiff, CHRISTOPHER REDDICK is an individual residing in Harrison County,

Texas, who resides at 1660 Ferguson, Harleton, Texas 75651.

2.      Plaintiff, TERRI EUBANKS is an individual residing in Harrison County, Texas who resides at 1660 Ferguson, Harleton, Texas 75651.

3.      Plaintiff, DAVID REDDICK, is an individual residing in Upshur County, Texas, who resides at P.O. Box 989, Ore City, Texas 75683.

4.      Defendant, GENERAL MOTORS CORPORATION is a Michigan Corporation that has engaged in business in the State of Texas by selling and distributing motor vehicles through a worldwide chain of distribution. GENERAL MOTORS CORPORATION has been served and has answered herein.

5.      Defendant, TAKATA CORPORATION is a Japanese Corporation, having its principal place of business at 1-4-30 Roppongi, Minato-ku, Tokyo 106-8510 Japan. TAKTA CORPORATION manufacturers safety restraint products and directs those products to the United States, including Texas. TAKATA CORPORATION owns, supervises and controls, T K Holdings, Inc., Irvin Industries, Inc., Halle Industries, Inc., Takata, Inc., Takata Seatbelts, Inc., Takata Restraint Systems, Inc., Irvin Automotive Products and Takata, Petri AG and regularly conducts business in the Eastern District of Texas.

6.      T K HOLDINGS, INC. is a Delaware Corporation, having its principal place of business at 2500 Takata Drive, Auburn Hills, MI 48336-2634; it is a wholly owned subsidiary of Takata Corporation; and it regularly conducts business in the Eastern District of Texas.

7.      IRVIN AUTOMOTIVE INDUSTRIES, INC. is a corporation with its principal place of business located at 1-Gulf Western Plaza, New York, NY 10023; it was merged into, became part of and/or was acquired by Takata, Inc. and it regularly conducts business in the Eastern District of Texas.

8. HALLE INDUSTRIES, INC. is a Delaware Corporation having its principal place of business at 225 S. 15th St., Philadelphia, PA  19102-3831; it was merged into, became part, was acquired by and/or changed its name to Irvin Automotive Industries, Inc., who then merged into, became part of and/or was acquired by Takata, Inc. and it regularly conducts business in the Eastern District of Texas.

9. TAKATA INC. is a corporation with its principal place of business at 2500 Takata Dr., Auburn Hills, MI  48326-2634 and can be served by serving its registered agent for service; CT Corporation System, 118 N. Congress St., Jackson, MS 39201-2604 and it regularly conducts business in the Eastern District of Texas.

10. TAKATA SEAT BELTS INC. is a Delaware Corporation and may be served by serving its registered agent for service, Prentice-Hall Corporation System, Inc., 601 Abbot Rd., East Lansing, MI  48823-3366.

11. TAKATA RESTRAINT SYSTEMS INC. is a Delaware Corporation and may be served by serving its registered agent for service, CSC-Lawyers Incorporating Service, 601 Abbot Rd, East Lansing, MI  48823-366.

12. IRVIN AUTOMOTIVE PRODUCTS INC. is a Delaware Corporation with its principal place of business at 2500 Takata Dr., Auburn Hills, MI  48326-2634 and my be served by serving its registered agent for service, Prentice-Hall Corporation, 701 Brazos St., Ste. 1050, Austin, Texas 78701-3232.

13. TAKATA-PETRI AG is a German Corporation, having its principal place of business at Bahnweg, 1, 63743 Aschaffenburg, Germany and it regularly conducts business in the Eastern District of Texas.

14.     In the alternative, the true names, identities, or capacities, whether individual, associate, corporate or otherwise, of Defendants DOE 1 through 100, inclusive, and each DOE in between, are unknown to Plaintiffs at this time, and Plaintiffs therefore sues said Defendants by such fictitious names.  When the true names, identities, capacities, or participation of such fictitiously designated Defendants are ascertained, Plaintiffs will ask leave of Court to amend their Complaint to insert said names, identities, capacities, together with the proper charging allegations.  Plaintiffs are informed and believe and thereon allege that each of the Defendants sued herein as a DOE is responsible in some manner for the events and happenings herein referred to, thereby legally causing the damages to Plaintiffs as hereinafter set forth.

15.     At all times mentioned herein, each of the Defendants sued herein was the agent, servant, and employee of each other and of his said Co-Defendants, and as such, was acting within the time, place, purpose, and scope of said agency, service, and employment; each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other Defendant as an agent, servant, and employee.

## II. JURISDICTION AND VENUE

16.     Venue is proper in this district under 28 U.S.C. 1332 because diversity of citizenship exists between Plaintiffs and Defendants.  Plaintiffs are citizens of the State of Texas, and Defendants are corporations maintaining their principal places of business outside the State of Texas.

17.     Defendant GM, now and at all times relevant to this matter, designed, produced and supplied General Motors Corporation vehicles for sale in the Eastern District of Texas.  Thus, Defendant is subject to personal jurisdiction in the Eastern District of Texas, Marshall Division.

18. Defendants TAKATA CORPORATION, T K HOLDINGS, INC., IRVIN AUTOMOTIVE INDUSTRIES, INC., IRVIN AUTOMOTIVE PRODUCTS, INC., HALLE INDUSTRIES, INC., TAKATA INC., TAKATA SEATBELTS, INC., TAKATA RESTRAINT SYSTEMS INC., TAKATA PETRI AG and DOES-100 now and at all times relevant to this matter, designed, engineered, manufactured, sold and supplied the restraint system and seat belt system for sale in the Eastern District of Texas. Thus, Defendant is subject to personal jurisdiction in the Eastern District of Texas, Marshall Division.

19. In addition, the amount in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00).

20. This Court also has jurisdiction over this lawsuit because Plaintiffs assert a claim for damages under the Consumer Product Safety Act., 15 U.S.C. § 2072.

21. Venue is appropriate in the Eastern District of Texas as events giving rise to the cause of action occurred within the Marshall Division of the Eastern District.

### III. FACTS

22. On or about December 18, 2006, Plaintiff, CHRISTOPHER REDDICK, was traveling southbound on US 259 outside the city limits of Diana, Upshur County, Texas in his 1995 Chevrolet Camaro, when the vehicle left the roadway and overturned.

23. At the time of the above-described crash, the 1995 Chevrolet Camaro was in a dangerous and defective condition that had existed from the time of its design and manufacture by the Defendant, GENERAL MOTORS CORPORATION.

24. Further, at all times material hereto, including the dates the 1995 Chevrolet Camaro was manufactured and placed into the stream of commerce, the Defendant, GENERAL MOTORS CORPORATION failed to recall all defective Chevrolet Camaros, failed to correct

or attempt to correct said defects and dangers, and failed to warn the public of said defects and dangers, including the Plaintiff.  The Plaintiff was unaware of any defects and dangers associated with the use of said vehicle.

25. At the time of the above-described crash, the 1995 Chevrolet Camaro was equipped with a restraint system and seat belt assembly that was designed, engineered, manufactured and sold by Defendants, TAKATA CORPORATION, T K HOLDINGS, INC., IRVIN AUTOMOTIVE INDUSTRIES, INC., IRVIN AUTOMOTIVE PRODUCTS, INC., HALLE INDUSTRIES, INC., TAKATA INC., TAKATA SEATBELTS, INC., TAKATA RESTRAINT SYSTEMS INC., TAKATA PETRI AG, either directly or through their subsidiaries or predecessors.

26. Pleading in the alternative, at the time of the above-described crash, the 1995 Chevrolet Camaro was equipped with a restraint system and seat belt assembly that was designed, engineered, manufactured and sold by the Defendants, DOES 1-100.

27. At the above mentioned time, date and place, the Plaintiff, CHRISTOPHER REDDICK, was operating the 1995 Chevrolet Camaro in a reasonable foreseeable manner and for the purpose for which it was intended; nevertheless, CHRISTOPHER REDDICK, as a direct and proximate result of the defective and dangerous condition of the 1995 Chevrolet Camaro suffered severe and permanent physical injuries and is now a quadriplegic.

28. At the above mentioned time, date and place, the Plaintiff, CHRISTOPHER REDDICK, was operating the 1995 Chevrolet Camaro in a reasonable foreseeable manner and Plaintiff relied upon the restraint system and seat belt assembly installed in the Camaro and as a result of his relying on said restraint system and seat belt assembly Plaintiff suffered severe and permanent physical injuries and is now a quadriplegic.

# IV. CAUSE OF ACTION AGAINST
# GENERAL MOTORS CORPORATION

## Strict Liability

29.   Plaintiffs incorporate by reference all allegations made elsewhere in this Complaint.

30.   The Defendant, GENERAL MOTORS CORPORATION, had a duty to provide Christopher Reddick a vehicle that was reasonably safe and crashworthy, free of unreasonable defects of design and manufacturing, specifically the Chevrolet Camaro.

31.   The 1995 Chevrolet is a fourth generation F-Car, which includes the Pontiac Trans Am and the Chevrolet Camaro models. The Chevrolet Camaro in question is a T-roof or T-top model.

32.   The fourth generation F-Car, specifically the T-roof or T-top model Camaro, is not reasonably crashworthy, in part, because its body lacks structural integrity. GENERAL MOTORS CORPORATION failed to adequately reinforce the vehicle to minimize body instability, including torquing, bending, twisting and intrusions into the driver's compartment. As a direct and proximate result of this defect, during a roll over, the pillars collapsed. GENERAL MOTORS CORPORATION should have and could have incorporated a permanent rail connecting the A and B-Pillar/Sail Pillar and/or a structurally sound removable rail device between the A and B-Pillar/Sail Pillar and/or strengthened the affected structural members to prevent excessive deformation and protrusion into the driver's compartment during a foreseeable collision.

33.   The 1995 Chevrolet Camaro was defective and in an unreasonably dangerous condition existed in the following respects:

    a.   the vehicle's roof T-top was defectively designed and/or manufactured, allowing its cross member to unsafely collapse inwards at the time of the crash;

    b.    the interior components and padding within the vehicle were defectively designed and inadequate to provide reasonably safe occupant protection;

    c.    the vehicle was not reasonably crashworthy due to defective design and/or manufacture;

    d.    the vehicle failed to provide reasonable head and spine protection to the driver of the vehicle.

    e.    Defendant, GENERAL MOTORS CORPORATION, failed to give adequate warnings of and defective design and/or manufacture, and failed to recall and/or retrofit said vehicle, although the Defendant knew, or should have known, of the above described defects; and

    f.    Defendant, GENERAL MOTORS CORPORATION, had knowledge that its product was defective and unreasonably dangerous in a rollover but nevertheless continued to market said product without making modifications that were technologically feasible to eliminate or mitigate the said dangers, nor did the Defendant, GENERAL MOTORS CORPORATION, provide consumers with any warning of said dangers, and acted intentionally and in reckless disregard of the safety of persons exposed to the vehicles' dangerous effects. Said acts by the Defendant, GENERAL MOTORS CORPORATION, are of a gross and flagrant character in reckless disregard of the safety and welfare of consumers of the Chevrolet Camaro, specifically drivers of said product, involved in a rollover.

34.    As a result of the defects set forth above, the Plaintiff, CHRISTOPHER REDDICK suffered severe and permanent physical injuries and is now a quadriplegic.

## Negligence and Gross Negligence

35.    Plaintiffs incorporate by reference all allegations made elsewhere in this Complaint.

36.    The Defendant, GENERAL MOTORS CORPORATION, had a duty to the Plaintiff, CHRISTOPHER REDDICK, and others similarly situated to use due care in designing, manufacturing, assembling, testing, inspecting, distributing, warning, instructing, and otherwise exercising reasonable care with respect to the 1995 Chevrolet Camaro that was placed into the stream of commerce.

37.    The Defendant, GENERAL MOTORS CORPORATION, breached said duty by negligently and carelessly designing, manufacturing, assembling, testing, inspecting, distributing, warning, instructing and otherwise failing to exercise reasonable care relative to the 1995

Chevrolet Camaro so as to cause it to be unreasonably dangerous to any person or persons using it in a reasonably foreseeable manner and for the purpose for which it was intended.

38.     Specifically, the 1995 Chevrolet Camaro was in an unreasonable condition at the time it left the control of Defendant, GENERAL MOTORS CORPORATION.

39.     The Defendant, GENERAL MOTORS CORPORATION, knew or should have known that the 1995 Chevrolet Camaro was dangerous and that it was reasonably foreseeable that said condition could cause serious harm to the persons such as CHRISTOPHER REDDICK. In addition to the aforementioned negligence, the Defendant negligently failed to recall said product, correct or attempt to correct said defect, and/or warn or instruct the Plaintiff of the potential dangers.

40.     GENERAL MOTORS CORPORATION knew from its testing that the fourth generation F-Car, including the Chevrolet Camaro, was not reasonably crashworthy.  GENERAL MOTORS CORPORATION knew of technological improvements which would have improved the crashworthiness of the fourth generation F-Car, including the Chevrolet Camaro.  However, despite this knowledge, GENERAL MOTORS CORPORATION failed to implement such improvements.

41.     The negligence of Defendant as alleged herein was of such character as to make said Defendant guilty of gross negligence. The conduct of said Defendant was in heedless and reckless disregard of the rights of CHRISTOPHER REDDICK, and involved such an entire want of care as to indicate that it was a result of conscious indifference to the rights, welfare, and safety of CHRISTOPHER REDDICK. CHRISTOPHER REDDICK seeks exemplary damages in such an amount as may be found to be proper under the facts and circumstances.

42.     As a direct and proximate result of the foregoing acts of negligence and gross

negligence, CHRISTOPHER REDDICK, suffered severe and permanent physical injuries and is now a quadriplegic.

## Breach of Warranty

43. Plaintiffs incorporate by reference all allegations made elsewhere in this Complaint.

44. GENERAL MOTOR CORPORATION's sale of the Chevrolet Camaro in the defective and unreasonably dangerous condition hereinbefore described constituted a breach of the implied warranties of the merchantability and fitness for intended use.

45. CHRISTOPHER REDDICK's severe, painful, disabling and permanent injuries were proximately caused by the breach.

## Inadequate Standards

46. Applicable safety standards issued by the Federal Government or any other agency or group, if any, were inadequate to protect the public from unreasonable risks of injury or damage and Defendant FORD has withheld or misrepresented information and/or material relevant to the federal government's or agency's determination of adequacy of the safety standard or regulations set at issue in this action.

## V. CAUSE OF ACTION AS TO DEFENDANTS, TAKATA CORPORATION, T K HOLDINGS, INC., IRVIN AUTOMOTIVE INDUSTRIDS, INC., IRVIN AUTOMOTIVE PRODUCTS, INC., HALLE INDUSTRIES, INC., TAKATA INC., TAKATA SEATBELTS, INC., TAKATA RESTRAINT SYSTEMS INC., TAKATA PETRI AG and DOE 1-100 DEFENDANTS

## Strict Liability

47. Plaintiffs incorporate by reference all allegations made elsewhere in this Complaint.

48. On December 18, 2006 at the time the Chevrolet Camaro was sold it was equipped with a restraint system and seat belt assembly. This was the original equipment installed in the Chevrolet Camaro when it was manufactured; this restraint system and seat belt assembly was

designed, engineered, manufactured and sold by Defendants either directly or through their subsidiaries or predecessors.

49.     Prior to this incident, Defendants knew that their restraint system and seat belt assembly was inadequate and knew that the installation of this restraint system and seat belt assembly would result in people being seriously injured or killed.

50.     Prior to this incident, Defendants never warned General Motors Corporation of the inadequacies of the restraint system and seat belt assembly nor did they recommend to General Motors Corporation that the restraint system and seat belt assembly be improved.

51.     Prior to this incident, Defendants knew that General Motors Corporation would be manufacturing and selling their vehicles with the restraint system and seat belt assembly that was inadequate to protect drivers from foreseeable danger.

52.     At all times relevant hereto, Defendants, either directly or through their subsidiaries or predecessors were engaged in the designing, engineering, manufacturing and selling seat belt assemblies and restraint systems.

53.     Defendants knew or should have known that their restraint system and seat belt assembly would be placed into the stream of commerce in the Eastern District of Texas.

**Negligence and Gross Negligence**

54.     Plaintiffs incorporate by reference all allegations made elsewhere in this Complaint.

55.     The designing, engineering, manufacturing and selling of the seat belt assembly and restraint system in the 1995 Chevrolet Camaro in the condition described herein was unreasonable and negligent, grossly negligent and the result of a wanton, reckless and conscious disregard for safety.

56.     The aforementioned negligence of the Defendants consisted of the following acts and

omissions:

    a. Failure to design, prepare, engineer, manufacture and sell the seat belt assembly and restraint system with reasonable care;
    b. Failure to provide a seat belt assembly and restraint system which was adequate to protect the Plaintiff from foreseeable harm;
    c. Failure to adequately and properly test its seat belt assembly and restraint system;
    d. Failure to provide adequate and sufficient warnings and instructions about the risks, dangers and harms presented by the seat belt assembly and restraint system.

57. As a direct and proximate result of the negligence, gross negligence and wanton, reckless and conscious disregard for safety by Defendants, CHRISTOPHER REDDICK, suffered severe and permanent physical injuries and is now a quadriplegic.

## Breach of Warranty

58. Plaintiffs incorporate by reference all allegations made elsewhere in this Complaint.

59. Defendants' sale of its seat belt assembly and restraint system for installation in the 1995 Chervolet Camaro in the defective and unreasonably dangerous condition hereinbefore described constituted a breach of the implied warranties of the merchantability and fitness for intended use.

60. CHRISTOPHER REDDICK"s severe, painful, disabling and permanent injuries were proximately caused by this breach.

## Inadequate Standards

61. Applicable safety standards issued by the Federal Government or any other agency or group, if any, were inadequate to protect the public from unreasonable risks of injury or damage and Defendants have withheld or misrepresented information and/or material relevant to the federal government's or agency's determination of adequacy of the safety standard or regulations set at issue in this action.

## VI.  DAMAGES

62.     Furthermore, CHRISTOPHER REDDICK sustained significant general damages as a direct result of the acts and omissions of the Defendant, which damages shall be fully proven at the time of trial. These damages include, without limitation, damages for past and future pain and suffering; past and future permanent physical injury; past and future mental anxiety and emotional distress; and loss of enjoyment of life in the past and future.

63.     Plaintiff also suffered special, incidental, and consequential damages as a direct result of the acts and omissions of the Defendant, which damages shall be fully proven at the time of trial. These damages include, without limitation, damages for past and future medical care and treatment costs; pharmaceutical expenses; wage, benefits and economic loss; travel costs; and other ordinary incidental and consequential damages arising under the circumstances.

## VII.  DAMAGES AS TO TERRI EUBANKS

64.     TERRI EBUANKS is the mother of CHRISTOPHER REDDICK.  As a result of the injuries suffered by her son which left him a quadriplegic, TERRI EBUANKS has suffered severe emotional pain which will likely continue into the future. TERRI EUBANKS has also suffered pecuniary loss, including loss of the care, maintenance, support, services, advice, counseling and contributions of a pecuniary value that she would in reasonable probability have received from her son during his lifetime.  Loss of Consortium in the past, including damages to the parent-child relationship, including loss of care, comfort, solace, companionship, protection, services, and/or parental love.  Loss of Consortium in the future including damages to the parent-child relationship, including loss of care, comfort, solace, companionship, protection, services, and/or parental love. Terri Eubanks has expounded a great sum of money in an effort to provide around the clock care to Christopher, has made

substantial modifications to her home to care for her son and has had to purchase a special vehicle for his transportation. For these losses, TERRI EUBANKS seeks damages in a sum in excess of the minimum jurisdictional limits of the Court.

### VIII. DAMAGES AS TO DAVID REDDICK

65. DAVID REDDICK is the father of CHRISTOPHER REDDICK. As a result of the injuries suffered by his son, which left him a quadriplegic, DAVID REDDICK has suffered severe emotional pain which will likely continue into the future. DAVID REDDICK has also suffered pecuniary loss, including loss of the care, maintenance, support, services, advice, counseling and contributions of a pecuniary value that he would in reasonable probability have received from his son during his lifetime. Loss of Consortium in the past, including damages to the parent-child relationship, including loss of care, comfort, solace, companionship, protection, services, and/or parental love. Loss of Consortium in the future including damages to the parent-child relationship, including loss of care, comfort, solace, companionship, protection, services, and/or parental love. For these losses, CHRISTOPHER REDDICK, seeks damages in a sum in excess of the minimum jurisdictional limits of the Court.

### IX. EXEMPLARY DAMAGES

66. Defendants' actions were malicious, when viewed objectively from the standpoint of the actor at the time of its incurrence, and involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Defendants' consumers, such as CHRISTOPHER REDDICK. Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety and welfare of its consumers. Therefore, exemplary damages should be assessed against

Defendants to deter other automobile manufacturers from maliciously disregarding the rights, safety and welfare of their consumers.

## **PRAYER**

WHEREFORE PREMISES CONSIDERED, Plaintiffs, Christopher Reddick, Terri Eubanks and David Reddick, request that Defendants be cited to appear and answer, and that on final trial Plaintiffs have: judgment against Defendants, for Plaintiffs' damages as set forth above, in an amount within the jurisdictional limits of this Court; interest on the judgment at the legal rate from date of judgment; prejudgment interest on Plaintiffs' damages as allowed by law; exemplary damages; costs of court; and for such other and further relief to which Plaintiffs may be entitled.

      Respectfully submitted,

      SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM


      /s/   John D. Sloan, Jr.
      JOHN D. SLOAN, JR.
      State Bar No. 18505100
      M. RAYMOND HATCHER
      State Bar No. 24002243
      GARRETT WILSON
      Texas State Bar No. 24051536
      Arkansas Bar No. 2006110
      Post Office Drawer 2909 101 East Whaley Street
      Longview, Texas 75606
      Telephone : (903) 757-7000
      Facsimile  : (903) 757-7574
      ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

       This is to certify that a true and correct copy of the above and foregoing document has been forwarded electronically to the following counsel of records pursuant to the Texas Rules of Civil Procedure on this 17th day of December, 2008.


Kyle H. Dreyer
Deron L. Wade
L. Abigail Foreman
Hartline, Dacus, Barger, Dreyer & Kern LLP
6688 North Central Expressway Suite 1000
Dallas, Texas 75206

                                               /s/  John D. Sloan, Jr.
                                               JOHN D. SLOAN, JR.